IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| GARY RONALD SLEZAK, | ) | C/A No. 4:06-1122-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| SAMUEL GLOVER, ET.AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, Gary Ronald Slezak ("plaintiff/Slezak"), a pro se state prisoner, filed this action alleging various civil rights violations pursuant to 42 U.S.C. § 1983. This matter is before the Court on the plaintiff's motion for partial summary judgment (document # 89), for an evidentiary hearing (document # 129), and to amend his complaint (document # 144); and the defendants' motions for summary judgment (documents # 114, 115, and 116).[1]

## I. PROCEDURAL BACKGROUND

On November 19, 2007, the plaintiff filed a motion for partial summary judgment. (Document # 89.) The defendants filed a response opposing the plaintiff's motion on December 6, 2007. (Document # 91.) On March 17, 2008, the defendants filed three separate motions for summary judgment. (Documents # 114, 115, and 116.)[2] The undersigned issued an order filed March 18, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the plaintiff of the motion

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

[2]The defendants Samuel B. Glover, Director of the South Carolina Department of Probation, Pardon and Parole Services, and the South Carolina Board of Probation, Parole and Pardon Services John and Jane Doe members filed one motion for summary judgment. These defendants are referred to as the Parole Board Defendants in this report. The defendants Jon Ozmint and the Warden Stan Burt filed the second summary judgment motion and the defendant Dr. Ramnarine Jaglal filed the third motion for summary judgment.

for summary judgment procedure and the possible consequences if he failed to respond adequately. On April 7, 2008, the plaintiff filed a response opposing the defendant Jaglal's motion for summary judgment along with a supporting affidavit (document # 130) and a motion for an evidentiary hearing on the issue of qualified immunity.  (Document # 129.)  On April 10, 2008, the plaintiff filed a memorandum of points and authority in opposition to the Parole Board defendant's summary judgment motion and in support of the plaintiff's motion for a hearing along with supporting exhibits. (Document # 131.)  On April 21, 2008, the plaintiff filed another memorandum opposing the defendants Ozmint and Burtt's summary judgment motions along with supporting exhibits and an affidavit.  (Document # 137.)  On May 8, 2008, the plaintiff also filed a motion to amend his complaint.  (Document # 144.)  Finally, on May 13, 2008, the plaintiff filed another memorandum in opposition to all of the defendants' summary judgment motions along with supporting exhibits and an affidavit.  (Document # 145.)  The defendants have filed replies to the plaintiff's responses and a memorandum in opposition to the plaintiff's motion for a hearing.  (Dcouments # 146- 148.)  Further, the defendants filed a memorandum in opposition to the plaintiff's motion to amend his complaint. (Document # 149.)

## II.  DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

On January 11, 1981, the plaintiff entered a grocery store in Charleston, South Carolina, and robbed two people at gunpoint.  He then shot both people multiple times killing them. The plaintiff was charged with two counts of murder and armed robbery.  The plaintiff eventually pled guilty to two counts of murder and one count of armed robbery and was sentenced to consecutive terms of life imprisonment for each murder and twenty years for the armed robbery, which was  to run concurrently.

At the time of the plaintiff's conviction, a person receiving a life sentence for murder was eligible for parole after the service of twenty years. Therefore, the plaintiff became eligible for parole in August 2000. On October 4, 2000, the plaintiff had his initial parole hearing after which he was denied parole. Since then, the plaintiff has had seven parole hearings and each time he has been denied parole. This action was filed in 2006, after the plaintiff had been denied parole on February 15, 2006. Since that time, the plaintiff was also denied parole on February 7, 2007, and on January 16, 2008. The plaintiff alleges the denial of parole is an ex post facto violation. (Am. Supp. Compl. at 1; ¶ 18.) Further, he contends the Parole Board defendants have conducted his parole hearings in violation of his due process and equal protection rights by applying an amended version of S.C. Code Ann. § 24-21-640 rather than the statute which was in effect at the time of his indictment. (Am. Supp. Compl. ¶ 18.)

In his amended supplemental complaint, the plaintiff has also alleged defendant Dr. Ramnarine Jaglal, a dentist employed at Lieber extracted one of the plaintiff's teeth without anaesthesia and failed to provide the appropriate follow-up treatment. (Am. Supp. Compl. ¶ 14.) The plaintiff also alleges that Dr. Jaglal told him that he would have the plaintiff "brought back for a new dental implant as he need [sic] new upper and lower dentures. [However, the plaintiff] has been without lower partial dentures for over a year and is suffering pain while trying to eat." (*Id.*)

The plaintiff also alleges several very general allegations concerning the conditions of his confinement. He alleges a claim of denial of access to the courts based on an South Carolina Department of Corrections ("SCDC") policy which requires inmates to pay for copies and other supplies. (Am. Supp. Compl. ¶ 12.) He also alleges the law library is inadequate. (*Id.*) He then alleges that his classification as a violent offender violates his due process rights. (Am. Supp. Compl. ¶ 13.) He alleges a claim regarding the denial of dental and medical care based upon SCDC policy

3

requiring inmates to pay co-payments for dental and sick call visits.  (*Id*. at ¶ 15.)   He alleges that inmates without jobs are placed in triple cells.  (*Id*. at ¶ 16.)  He alleges smokers are housed with nonsmokers, and that he was overcharged for tobacco prior to a smoking ban that took effect on June 18, 2007.  (*Id*.)  Finally, the plaintiff alleges that his cell is subject to constant flooding from the toilet and he raises various complaints about the cafeteria and food line at Lieber. (Am. Supp. Compl. ¶ 17.)  The plaintiff is seeking declaratory and injunctive relief and actual and punitive damages.  (Am. Supp. Comp. 13-16.)

## B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted. Fed.R.Civ.P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed.R.Civ.P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case,

4

on which that party will bear the burden of proof at trial. Fed.R.Civ.P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In <u>Celotex</u>, the Court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. <u>Celotex</u>, 477 U.S. at 322-323.


## C. DISCUSSION

### 1. Parole Board Defendants' Motion for Summary Judgment

In their summary judgment motion, the Parole Board defendants contend they are entitled to absolute immunity, Eleventh Amendment immunity, and qualified immunity. The Parole Board defendants also contend they are entitled to summary judgment because the plaintiff's claims regarding parole are without merit. The undersigned agrees.[3]

### a. Absolute Immunity

First, the Parole Board defendants contend that they are entitled to absolute immunity. It is well-settled that members of the judiciary are entitled to absolute immunity. <u>Pierson v. Ray</u>, 386 U.S. 547, 553-54 (1967). Absolute immunity has also been extended to parole officials because they perform tasks that are functionally comparable to those of judges. <u>Pope v. Chew,</u> 521 F.2d 400 (4th Cir. 1975). *See also* <u>Walrath v. United States</u>, 35 F.3d 277, 281-82 (7th Cir.1994) (holding members of the United States Parole Commission staff and the Commissioner are absolutely immune from suit for actions taken in revoking parole); <u>Sellars v. Procunier</u>, 691 F.2d 1295 (9th Cir. 1981) (absolute

---

[3]Plaintiff has pending a case asserting a claim under 28 U.S.C. § 2241. Thus, injunctive relief is not asserted or appropriate in this action.

immunity for Parole Board members); <u>Hilliard v. Board of Pardons and Paroles</u>, 759 F.2d 1150 (5th Cir. 1985) (same); <u>Nelson v. Balazic</u>, 802 F.2d 1077 (8th Cir. 1986) (same); <u>Harper v. Jeffries</u>, 808 F.2d 281, 284 (3d Cir. 1986) (absolute immunity for hearing examiner who conducted detention proceeding and made recommendation to parole board). Absolute immunity is " immunity from suit rather than a mere defense to liability." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985). The defendant Parole Board members are therefore entitled to dismissal of all claims against them in their individual capacities under the doctrine of absolute immunity.

**b. Eleventh Amendment Immunity**

The Parole Board defendants also contend that the plaintiff's §1983 claims against them for monetary damages are barred pursuant to Eleventh Amendment Immunity. In <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between

> § 1983 and the Eleventh Amendment of the Constitution and stated: Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

The Court found that the Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" and that state agencies, divisions, departments and officials are "arms of the state." <u>Will</u>, 491 U.S. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities. The Parole Board defendants are arms of the state. <u>Loftin v. South Carolina Probation & Parole</u>, 2008 WL 68630 (D.S.C. 2008) ("The South

Carolina Department of Probation, Parole & Pardon Services (SCDPPPS) is entitled to summary dismissal under the Eleventh Amendment, which divests this court of jurisdiction to entertain a suit brought against the State of South Carolina or its integral parts, such as a state agency or department.") Therefore, the Parole Board defendants in their official capacities are entitled to Eleventh Amendment immunity from monetary damages.

### c. Qualified Immunity

Finally, in their motions for summary judgment, the Parol Board defendants also allege they are entitled to qualified immunity. Even if a defendant has violated a plaintiff's rights, the defendant may be entitled to qualified immunity against the plaintiff's claims for monetary damages. Saucier v. Katz, 533 U.S. 194, 200 (2001). Although the burden of showing immunity remains on the defendants, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818. In determining whether a right is clearly established, the court must look first to the decisions of the United States Supreme Court, the United States Court of Appeals for the Fourth Circuit, and the highest court of the state in which the case arose. Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir.1999).

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir.1994) (internal citations omitted).

In Torchinsky v. Siwinski, 942 F.2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261 (citations omitted).

In Torchinsky, the court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." Id. The Torchinsky court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." Id. at 261 (citing Sevigny v. Dicksey, 846 F.2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. Torchinsky, 942 F.2d at 261 (citing Collinson v. Gott, 895 F.2d 994 (4th Cir.1990)). As the Fourth Circuit explained in Swanson v. Powers, 937 F.2d 965 (4th

Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F.2d at 967.   Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F.2d 295, 298 (4th Cir.1992) (citations omitted).

For a plaintiff to recover, he must show the defendant (I) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so.   The plaintiff's claims against the Parole Board defendants are founded on his arguments that these defendants incorrectly applied the amended parole statutes when they denied him parole.  As discussed below, the undersigned finds the plaintiff's claims are without merit and the defendants did not violate any of the plaintiff's clearly established rights.

As to the defendant Glover, in his complaint, the plaintiff alleges Glover violated his constitutional rights by "refusing to overturn the plaintiff's denial of parole."  (Am. Supp. Compl. ¶ 35.)  However, Director of the Parole Board, Glover's duties are purely administrative.  The duties of the Director are set forth in S.C. Code Ann. § 24-21-220, which states:

The director is vested with the exclusive management and control of the department and is responsible for the management of the department and for the proper care, treatment, supervision, and management of offenders under its control. The director shall manage and control the department and it is the duty of the director to carry out the policies of the department. The director is responsible for scheduling board meetings, assuring that the proper cases and investigations are prepared for the board, maintaining the board's official records, and performing other administrative duties relating to the board's activities. The director must employ within his office such personnel as may be necessary to carry out his duties and responsibilities including the functions of probation, parole, and community supervision, community-based programs, financial management, research and planning, staff development and training, and internal audit. The director shall make annual written reports to the board, the Governor, and the General Assembly providing statistical and other information pertinent to the department's activities.

Parole eligibility falls within the province of the Board. *Brown v. State*, 306 S.C. 381, 412 S.E.2d 399 (1991) (citing S.C. Code Ann. § 24-21-610). The Director is unable to overturn a decision relating to the plaintiff's parole, or otherwise exercise discretion in this matter. Therefore, Glover did not violate any of the plaintiff's rights. *See, e.g.,* Harlow v. Fitzgerald, 457 U.S. 800 (l952); Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994). Because no constitutional rights of plaintiff have been violated at all as discussed below, the Parole Board defendants, including defendant Glover, are entitled to qualified immunity. Alternatively, the plaintiff's claims fail on the merits as discussed below.

**d. Merits**[4]

As stated above, the plaintiff alleges he was denied parole in violation of the ex post facto clause. (Am. Supp. Compl. at 1; ¶ 18.) Further, he contends the Parole Board defendants conducted

---

[3]In a conclusory fashion, the plaintiff also states that the Parole Board did not address his request for a pardon. (Am. Supp. Compl. ¶ 18.) To the extent he is attempting to raise a claim relating to this allegation, such a claim is without merit. The Supreme Court has held that an inmate does not have an independent liberty interest in parole. Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 464 (holding that "an inmate has 'no constitutional or inherent right' to commutation of his sentence"). The Court went on to state that an inmate's "expectation that a lawfully imposed sentence will be commuted or that he will be pardoned is no more substantial than an inmate's expectation, for example, that he will not be transferred to another prison; it is simply a unilateral hope." *Id.* at 465.

his parole hearings in violation of his due process and equal protection rights by applying an amended version of S.C. Code Ann. § 24-21-640 rather than the statute which was in effect at the time of his indictment. (Am. Supp. Compl. ¶ 18.) The defendants argue that the plaintiff's claims have no merit and have been rejected in a number of cases, including the plaintiff's own state Administrative Law Court proceeding and therefore should be dismissed. The undersigned agrees.

"Section 1983 . . . authorizes courts to redress violations of 'rights, privileges, or immunities secured by the Constitution and [federal] laws' that occur under color of state law. The statute is thus limited to deprivations of federal statutory and constitutional rights. It does not cover official conduct that allegedly violates state law." Neinast v. Bd. of Trs. of the Columbus Metro. Library, 346 F.3d 585, 597 (6th Cir. 2003)(internal citations and quotations marks omitted).

Although the plaintiff's due process challenge to the procedures used by the parole board is cognizable under § 1983 pursuant to Wilkinson v. Dotson, 544 U.S. 74 (2005), the plaintiff has failed to state a violation of due process. A plaintiff bringing a § 1983 action for procedural due process must show that the state deprived him or her of a constitutionally protected interest in "life, liberty, or property" without due process of law. Zinermon v. Burch, 494 U.S. 113, 125 (1990) (citing Parratt v. Taylor, 451 U.S. 527, 537 (1981)). A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989).

First, the undersigned notes that the United States Constitution itself does not create a protected liberty interest in the expectation of early release on parole. Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979); see also Jago v. Van Curen, 454 U.S. 14, 18-20 (1981)(mutually explicit understanding that inmate would be paroled does not create liberty interest). "There is no constitutional or inherent right of a convicted person to be conditionally released before

11

the expiration of a valid sentence." Greenholtz, 442 U.S. at 7.  "It is therefore axiomatic that because

. . . prisoners have no protected liberty interest in parole they cannot mount a challenge against a state

parole review procedure on procedural (or substantive) Due Process grounds."  Johnson v. Rodriguez,

110 F.3d 299, 308 (5th Cir.1997).

        Because there is no constitutional right, federal courts "recognize due process rights in an

inmate only where the state has created a 'legitimate claim of entitlement' to some aspect of parole."

Vann v. Angelone, 73 F.3d 519, 522 (4th Cir. 1996); Gaston v. Taylor, 946 F.2d 340, 344 (4th

Cir.1991).  The South Carolina Supreme Court has found that "[a]lthough this provision [§ 24-21-640]

creates a liberty interest in parole eligibility, it does not create a liberty interest in parole."  Furtick v.

South Carolina Dep't of Probation, Parole & Pardon Services, 576 S.E.2d 146, 149 (S.C. 2002).

        In his memorandum opposing summary judgment, the plaintiff cites to a South Carolina circuit

court order in the case of  Cooper v. S.C. Dep't of Probation, Parole & Pardon Servs. and included a

copy as an exhibit.  (Document # 131- Pl.'s Mem. Opp. Summ. J. at 4 n. 5 & Ex. E).  The South

Carolina Supreme Court recently reviewed the circuit court's order in Cooper v. S.C. Dep't of

Probation, Parole & Pardon Servs., 2008 WL 1930527 (filed May 5, 2008).  In Cooper, the South

Carolina Supreme Court addressed two parole claims raised by an inmate: an ex post facto claim and

a due process claim.  The court rejected the ex post facto claim which was similar to the one which

the plaintiff makes in this case.  The court noted that § 24-21-640 had not been substantively changed

since the inmate's 1984 conviction, and the Parole Board did not exceed its authority in creating

written criteria because § 24-21-640 specifically authorized the Board to establish written criteria for

the granting of parole.   As for the due process claim, the court held that the Parole Board should be

required in its decisions to indicate "that it considered the factors outlined in § 24-21-640 and the

fifteen factors published in its parole form." 2008 WL 1930527 at *5.  The Court held that "the

12

apparent failure by the Parole Board to consider the requisite statutory criteria in rendering its decision constitutes an infringement of a state-created liberty interest and, thus, warrants minimal due process procedures." *Id.*

Here, however, the plaintiff has not alleged in his amended complaint nor argued in his numerous filings that the order denying him parole simply failed to reflect or to recite consideration of the Board's own criteria, whether contained in the statute or in the Board's list of criteria. Instead, the plaintiff argues only that the version of the statute in effect at the time of his indictment in 1981 did not authorize the Board to create those criteria. The plaintiff states that his "primary substantive claim against the Parole Board members is that they had no legislative authority at the time of plaintiff's indictments to promulgate any additional criteria for the granting of parole or any policy's or procedures which are currently being used by the defendants to deny the plaintiff his bid for parole. . . . There is no[ ] evidence in the record that the plaintiff was reviewed under S.C. Code Ann. § 24-21-640, (1976), in effect at the time of his indictments." (Document # 131 - Pl.'s Mem. Opp. Summ. J. at 5) The plaintiff has never requested the relief sought and granted in the Cooper case and, therefore, it is simply inapplicable.

In any event, the holding in Cooper should be applied prospectively only. In Williams v. U.S. Parole Com'n., 617 F.Supp. 470, 475 (M.D. Pa.1985), the court held after a court decision changed the criteria to be considered by the Parole Commission in its hearings, the decision should only be applied prospectively. In Williams, the court correctly pointed out that not all legal rulings should be applied retroactively. Relying on the criteria for retroactivity established by the United States Supreme Court in Solem v. Stumes, 465 U.S. 638 (1984), the court concluded by stating that considering the parole commission's current caseload, it is plain that retroactive application of the

13

rule would have a significant negative impact on the administration of justice which could not be justified when the fundamental issue of plaintiff's innocence or guilt was not implicated. 617 F.Supp. at 475. See also <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972)(applying new due process rules only prospectively in parole revocation cases).

Nothing in the <u>Cooper</u> opinion suggests that other inmates whose parole was denied in the same manner would be entitled to a rehearing of the Parole Board's most recent denial of parole to them. Further, <u>Cooper</u> should be applied only prospectively as there is nothing in the <u>Cooper</u> opinion to indicate otherwise. In other words, the <u>Cooper</u> holding should be applied at the plaintiff's next regularly-scheduled parole. Accordingly, the plaintiff's claim that his due process rights have been violated should be dismissed.

Further, the plaintiff has not established any ex post facto violation stemming from the application of the amended § 24-21-640. *See* <u>Cooper</u>, 2008 WL 1930527 * 6 (Section 24-21-640 has not been substantially amended since Cooper was convicted in 1985). In 1981, when the plaintiff pled guilty, § 24-21-640 provided, in pertinent part,:

> The Probation, Parole and Pardon Board shall carefully consider the record of the prisoner . . ., and no such prisoner shall be paroled until it shall appear to the satisfaction of the Board that the prisoner has shown a disposition to reform; that in the future he will probably obey the law and lead a correct life; that by his conduct he has merited a lessening of the rigors of his imprisonment; that the interests of society will not be impaired thereby; and that suitable employment has been secured for him.

In 1986, the statute was amended to read:

> The board must carefully consider the record of the prisoner before, during and after imprisonment, and no such prisoner may be paroled until it appears to the satisfaction of the board: that the prisoner has shown a disposition to reform; that, in the future he will probably obey the law and lead a correct life; that by his conduct he has merited a lessening of the rigors of his imprisonment; that the interest of society will not be impaired thereby; and, that suitable employment has been secured for him.

"An ex post facto violation occurs when a change in the law retroactively alters the definition of a crime or increases the punishment for a crime." <u>Jernigan v. State</u>, 531 S.E.2d 507, 509 ( S.C. 2000). In <u>Jernigan</u>, the South Carolina Supreme Court held that the retroactive application of a state statute changing reviews for parole eligibility for violent offenders from annual to biannual constituted an ex post facto violation. *Id.* at 511-12. The court noted, "The law existing at the time of the offense determines whether an increase of punishment constitutes an ex post facto violation." *Id.* at 509 n. 3. *See also* <u>Steele v. Benjamin</u>, 606 S.E.2d 499, 503 (S.C. Ct. App. 2004)(inmate's complaint that the biannual parole review constituted an ex post facto violation, potentially lengthening the period of his incarceration by one year, implicated a liberty interest.").

The first amendment made to § 24-21-640 was merely a stylistic change in the language from "shall carefully consider" to "must carefully consider." Second, in the original statute the language was that "a person shall be paroled" if he meets certain criteria. The amendment changed the language to provide that "no such prisoner may be paroled" unless he meets certain criteria. These amendments did not change the criteria listed. As the plaintiff's incarceration has not been lengthened and there has been no change in the substance of the statute from the time when the plaintiff's committed his offense, there is simply no ex post facto issue present in this case.

In his amended supplemental complaint, the plaintiff also alleges that defendant Glover, Director of the South Carolina Department of Probation, Pardon and Parole Services, had no authority to exercise discretion in this matter. (Am. Supp. Compl. at 18.) The plaintiff alleges that defendant Glover "reviewed plaintiff's administrative appeal after plaintiff was denied parole. . . ." The duties of the Director, as set forth in S.C. Code Ann. § 24-21-220, are of an administrative nature and do not include the granting or denying parole. The decision whether to grant or deny parole is vested only in the Board, not in the Director. S.C. Code Ann. § 24-21-610. The plaintiff does not allege that

15

defendant Glover acted beyond his authority.   As a result, the plaintiff has failed to state a claim against this defendant in his individual capacity.

## 2.  Defendants' Ozmint and Burtt's Motion for Summary Judgment[5]

### a. Exhaustion

As stated above, in his complaint the plaintiff makes numerous general allegations against defendants Ozmint and Burtt regarding prison conditions.  The defendants Ozmint and Burt contend the plaintiff has failed to exhaust his administrative remedies regrading these prison conditions claims except, arguably, for his allegations of double/triple celling. The undersigned agrees.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In Porter v. Nussle, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.  Recently in Woodford v. Ngo, ___ U.S.___ , 126 S. Ct. 2378, 2386, 165 L.Ed.2d 268 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires proper exhaustion.  The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly."  *Id*. (Internal quotations and citations omitted).   Failure to exhaust all levels of

---

[4] In the plaintiff's motion for partial summary judgment, he contends he should be granted summary judgment on his access to court claim.  Based upon the undersigned's recommendation that the defendants be granted summary judgment on this claim, the undersigned also recommends that the plaintiff's motion for partial summary judgment be denied.

administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. *Id*.

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." <u>Woodford</u>, 126 S.Ct. at 2385 (*quoting* <u>McCarthy v. Madigan</u>, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id*. Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

In order to exhaust the SCDC administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty (40) days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five (5) days of the receipt of the response from the Warden. A responsible official has sixty (60) days to respond to the Step 2 grievance. The decision of the official who answers Step 2 is considered the SCDC's final response in the matter. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under §1983. 42 U.S.C. § 1997e.

In his amended supplemental complaint, the plaintiff in a section captioned "Exhaustion of legal Remedies" states he filed grievances only regarding the denial of his work credits and its impact

on his parole hearings and his allegation of triple celling. (Am. Supp. Compl. ¶ 19.)  Specifically, he states he exhausted the triple celling allegation in Slezak v. South Carolina Dept. of Corrections, 605 S.E.2d 506, 508 (S.C. 2004).  (*Id*.)  However, in that case, the court merely held that the plaintiff was entitled to a hearing before a state Administrative Law Judge on the issue of triple celling.  In his response opposing summary judgment, the plaintiff also alleges he was prevented from properly exhausting his administrative remedies as to his denial of access claim.  (Document #145 - Pl.'s Mem. Opp. Summ. J. Mot. at 8.)  He alleges the defendants or their agents lost or refused to process grievances regarding  triple-celling, medical indifference, flooding toilets, and cafeteria claims.  (*Id*. & Ex. J- Pl.'s Decl. at 10. )  Even if the plaintiff had exhausted his administrative remedies as to these claims, all of the claims which the plaintiff has alleged in his amended supplemental complaint against the defendants Ozmint and Burtt should still be dismissed on the merits as discussed below.[6]

**b.  Merits**

I.  Triple Celling

To file a lawsuit in federal court, a plaintiff must have Article III standing. *See* McConnell v. Federal Elec. Comm'n, 540 U.S. 93, 226 (2003) (noting that " 'a threatened injury must be certainly impending to constitute injury in fact' "); Friends of the Earth, Inc. v. Laidlaw Environmental Serv. (TOC), 528 U.S. 167, 198 (2000) (noting that for a plaintiff to demonstrate standing at the pleading stage "[g]eneral allegations of injury may suffice . . ." and that a plaintiff must demonstrate how he

---

[5]In his memorandum opposing summary judgment, the plaintiff alleges several new claims, such as denial of exercise, reasonable safety, and protection from another inmate.  (Document #145- Pl.'s Mem. Opp. Summ. J. at 5 & Ex. J - Pl.'s Decl. generally.)   However, the plaintiff did not raise these allegations at any prior stage of this litigation, and his allegations are stated in the form of vague, conclusory accusations which are insufficient to survive summary judgment. White v. Boyle, 538 F.2d 1077 (4th Cir.1976) (conclusory allegations insufficient to avoid summary judgment).  Therefore, this report addresses only those claims properly before the court which are found in the amended supplemental complaint.

personally was harmed and his subjective apprehensions of the threat of injury are not sufficient). There are three essential elements of standing: injury in fact, causation, and a substantial likelihood that the requested relief will remedy the alleged injury in fact. <u>Fisher v. King</u>, 232 F.3d 391, 396 n. 5 (4th Cir. 2000). As to the plaintiff's allegations regarding double or triple celling, there is no evidence in the record that the plaintiff himself is being triple celled. (Am. Supp. Compl. ¶ 16.)

Even liberally construing the complaint, here, the plaintiff does not allege any facts whatsoever that would tend to prove that <u>he</u> was ever double or triple-celled. Nor that he has suffered any injury. The plaintiff's claims regarding double or triple celling consists of entirely conclusory allegations that the defendants are double or triple celling inmates without jobs. Conclusory allegations, without more, are insufficient to preclude the granting of the summary judgment motion. <u>Ross v. Communications Satellite Corp.</u>, 759 F.2d 355, 365 (4th Cir. 1985). Additionally, the undersigned notes that "double or triple celling of inmates is not per se unconstitutional." <u>Williams v. Griffin</u>, 952 F.2d 820, 824 (4th Cir. 1991). Accordingly, the defendants should be granted summary judgment on the plaintiff's claims regarding triple celling.

ii.  Access to Courts

With respect to his claims pertaining to the law library and the denial of access to the courts, the plaintiff has not established any actual injury. To state a claim that the defendants have abridged his right of access to the courts, an inmate must demonstrate some actual harm or prejudice to his ability to communicate with the court or with counsel. <u>Lewis v. Casey</u>, 518 U.S. 343 (1996) (holding that when an inmate has had access to court, but alleges that officials deprived him of some item necessary for meaningful pursuit of his litigation, such as his already prepared legal materials, the inmate must allege facts showing actual injury or specific harm to his litigation efforts resulting from denial of the item). Actual injury requires that the inmate demonstrate that his "nonfrivolous"

19

post-conviction or civil rights legal claim has been "frustrated" or "impeded." Lewis, 518 U.S. at 353-55 (adding that the right to access the court "does not guarantee [prisoners] the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims," that "[t]he tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement," and that "[i]mpairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration"). The plaintiff has made only conclusory allegations, claiming that the his "pro se petitions for post-conviction relief and inmate grievances were dismissed because the Defendant would not furnish law books, free copy service to file and appeal grievances, access to the law library is restricted to once a week for approximately 45 minutes to 60 minutes, if an when you can get on the limited sign up sheet in the dorm where you reside." (Am. Supp. Compl. at 12.) [7]

In the plaintiff's memorandum supporting his partial motion for summary judgment, the plaintiff claims for the first time that he needs the use of a law library in connection with the appeal of an inmate grievance pending in the South Carolina Court of Appeals, and also in connection with other inmate grievances in the Administrative Law Court or within the SCDC's grievance system. (Pl.'s Mem. Supp. Mot. for Partial Summ. J. at 3.) He also claims that a notice of appeal that he delivered to the SCDC mail system in November 2006 was never actually mailed. This claim relates

---

[6]In his memorandum opposing summary judgment, the plaintiff for the first time alleges he has been denied out-of-state law books which he needs to file a federal habeas action challenging his prior Nevada and California convictions. Again, the plaintiff has not shown any actual injury. Furthermore, the undersigned notes that it appears the plaintiff has some access to out-of-state law, as he cited cases and statutes from several other states in his memorandum opposing summary judgment. (Document # 137- Pl's Mem. Opp. Summ. J. at 11, 21.)

to his case,  Slezak v. S. C. Dep't of Probation, Parole & Pardon Servs., Nos. 03-ALJ-15-00005 and

03-ALJ-15- 00008 (S.C. ALC filed October 19, 2006).

First, the undersigned notes that the plaintiff did not include this claim in his amended

supplemental complaint.  Second, the plaintiff's claims of denial of access cannot be imputed against

any of the named defendants as he has not made any allegations against any of the named defendants.

Finally, the undersigned notes to state such a claim, the plaintiff must show  that a state court has  held

that the plaintiff is barred from proceeding with his alleged 2006 appeal.  This the plaintiff has not

done.  Thus, these general allegations, without more, are insufficient to state a claim for denial of

access to the courts. *See* Strickler v. Waters, 989 F.2d 1375, 1383 (4th Cir. 1993). Furthermore, the

undersigned notes that  the plaintiff is not entitled to free copying and "[a] denial of free photocopying

does not amount to a denial of access to the courts."  Ferola v. Director S.C. Dep't of Corr., 2006 WL

245397 (D.S.C. 2006)(*quoting* Johnson v. Moore, 948 F.2d 517, 521 (9th Cir. 1991)).  Accordingly,

these claims should be dismissed.

iii.  Classification as a violent offender

The plaintiff alleges the defendants have improperly classified him as a violent offender and

denied him a transfer to a less restrictive institution near Greenville which would allow his friends who

live in the upstate to visit him.  (Document # 145- Pl.'s mem. Opp. Summ. J. - Ex. J - Pl.'s Decl. at

4.)  However, South Carolina law confers no protected liberty interest upon inmates of the SCDC

from being classified, or being placed in administrative segregation, in a particular prison, or in a

particular section of a prison. *See, e.g.,* Keeler v. Pea, 782 F.Supp. 42, 43-44  (D.S.C. 1992)(*citing*

Meachum v. Fano, 427 U.S. 215 (1976)); Vice v. Harvey, 458 F.Supp. 1031, 1034 (D.S.C. 1978); and

Brown v. Evatt, 470 S.E.2d 848 (S.C. 1996) (holding South Carolina Supreme Court held that neither

state statutes creating/defining SCDC's powers nor SCDC's operational classification regulations

21

created a liberty interest in security or custody classifications). *See also* <u>Hewitt v. Helms</u>, 459 U.S. 460, 468 (1983) ("[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.").

In his memorandum opposing summary judgment, the plaintiff states that "the state constitution prohibits the defendants from classifying him as a violent offender . . . " (Document #145- Pl.'s Mem. Opp. Summ. J. at 12.) He specifically cites to Article XII, § 2 of the South Carolina state constitution, which states: "The General Assembly shall establish institutions for the confinement of all persons convicted of such crimes as may be designated by law, and shall provide for the custody, maintenance, health, welfare, education, and rehabilitation of the inmates." This section merely requires the establishment of prisons - it does not address the classification of inmates. In South Carolina, the authority to determine where an inmate is housed is vested in the SCDC. S.C. Code Ann. § 24-3-30(A) ("Notwithstanding any other provision of law, a person convicted of an offense against the State must be in the custody of the Department of Corrections, and the department shall designate the place of confinement where the sentence must be served.") Courts do not have the authority to dictate to the SCDC where an inmate should be housed. <u>Skipper v. South Carolina Dept. of Corrections</u>, 633 S.E.2d 910, 913 (S.C. App. 2006). Accordingly, this claim is without merit and should be dismissed.

iv. Co-payments and procedures for medical visits

As to the plaintiff's claims regarding having to pay co-payments for dental and medical visits, in <u>Manigault v. Ozmint</u>, 2006 WL 2471838 (D.S.C. 2006), the court held the SCDOC's co-payment policy for inmates does not violate the Constitution nor does it not violate ex post facto clause as the payments are not punitive. *See also* <u>Reynolds v. Wagner</u>, 128 F.3d 166, 174 (3rd Cir. 1997).

As for the plaintiff's allegations regarding having to line up for sick call and early morning reporting, these allegations do not state a claim. To establish a claim for deliberate indifference to medical needs, a plaintiff must present facts that establish the defendants had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825, 847 (1994). The plaintiff does not allege any denial of medical care or other deprivation which could reasonably be held to amount to deliberate indifference to medical needs based upon these allegations. "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" Coppage v. Mann, 906 F.Supp. 1025, 1037 (E.D.Va.1995) (quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987)). The plaintiff has not alleged facts indicating that he has any serious medical condition or that the defendants were deliberately indifferent to his medical needs. Only deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Id. Further, the plaintiff has not alleged any injury in regard to this claim. Thus, this claim should be dismissed.

v. Smoking claims

The plaintiff also alleges that smokers are housed with nonsmokers, and he was overcharged for tobacco products. (Am. Supp. Compl. ¶ 16.) This claim should be dismissed as the plaintiff was a smoker at one time and, furthermore, smoking is now banned. Thus, this claim is now moot. While the plaintiff admits he has "smoked on occasion," (Document #145- Pl.'s Mem. Opp. Summ. J. Ex. J - Pl.'s Decl. at 8) even if the plaintiff were a nonsmoker who was housed with a smoker in the past, he would still need to prove that he was exposed to unreasonably high levels of smoke, his future health is unreasonably endangered, and such exposure was contrary to current standards of decency,

23

thus showing deliberate indifference. Helling v. McKinney, 509 U.S. 25, 35 (1993). Here, the plaintiff merely states that he "believe[s] the exposure to unreasonably high levels of smoke over the past 28 years has future health implications and unreasonably endangered [his] health and that such exposure is contrary to current standards of decency, thus showing deliberate indifference." (Document #145 - Pl.'s Mem. Opp. Summ. J. Ex. J - Pl.'s Decl. at 8-9.) Conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985). Accordingly, this claim should be dismissed.

vi. Cafeteria claims

The plaintiff also raises various complaints about the cafeteria and food line at Lieber. (Am. Suppl. Compl. ¶ 17.) First, the plaintiff alleges that inmate cafeteria workers are permitted to sell food. If true, the undersigned certainly does condone such behavior. However, the plaintiff fails to allege how this affects any of his constitutional rights. The plaintiff also asserts that inmates "are allowed to cut in line causing the plaintiff to fear for his safety during meals." (Am. Suppl. Compl. ¶.) This conclusory type of allegation raising the claim that one fears for his safety are routinely held insufficient to state a claim for an Eighth Amendment violation. *See, e.g.*, Riddle v. Mondragon, 83 F.3d 1197 (10th Cir. 1996). Accordingly, these claims should be dismissed.

**c. Supervisory Liability**

Furthermore, to the extent the plaintiff relies on the doctrine of supervisory liability to impose liability against defendants Ozmint and Burtt, the plaintiff has failed to make the requisite showing of supervisory liability. "Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional

24

injury." Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (citation omitted).  The plaintiff must demonstrate that the prisoner faces a pervasive and unreasonable risk of harm from some specified source, and that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices.  *Id.  See also*  Moore v. Winebrenner, 927 F.2d 1312 (4th Cir.1991); Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984).

The defendants Ozmint and Burtt contend that the are not liable because they did not have any personal knowledge or direct involvement in the allegations the plaintiff makes.  The plaintiff has shown no evidence that either of them was aware of the plaintiff's situation and each defendant has stated that he had no recollection of the plaintiff's situation or complaints.  The plaintiff has also failed to show any specific act undertaken by these defendants in this action which would have violated his rights.  Thus, the plaintiff has accordingly failed to satisfy any of the three elements necessary to establish supervisory liability and these defendants should be dismissed as a matter of law.

**3.  Defendant Dr. Jaglal's Motion for Summary Judgment**

    **a.  Exhaustion**

The plaintiff alleges a medical indifference claim against Dr. Jaglal, a dentist employed by the SCDC.[8]  The defendant Dr. Jaglal contends that this claim should be dismissed because the plaintiff has failed to exhaust his administrative remedies and the claim also fails on the merits.  The undersigned agrees.

The plaintiff alleges that Dr. Jaglal extracted a loose tooth of plaintiff's without anesthetic, and then failed to perform appropriate follow-up treatment.  The plaintiff also alleges that Dr. Jaglal

---

[7]The undersigned notes that throughout the amended supplemental complaint, the plaintiff makes additional conclusory allegations that Dr. Jaglal used physical force against him and withheld medication, but he does not make any specific factual allegations regarding these claims.  (*See* Am. Supp. Compl. ¶¶ 27, 30, 31, and 35.)

told the plaintiff that he would have the plaintiff "brought back for a new dental implant as he need [sic] new upper and lower dentures. [Plaintiff] as been without lower partial dentures for over a year and is suffering pain while trying to eat." (Am. Suppl. Compl. ¶ 14.)

The record shows that the plaintiff did not file a grievance regarding his dental care until November 6, 2007, and that grievance was returned unprocessed to him on January 14, 2008 for procedural reasons. (Defs.' Mem. Supp. Summ .J. Mot. Supplemental Randall Aff. Ex. B at 17.)[9] Exhaustion is a prerequisite to suit that must be completed *prior* to filing an action. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005)(emphasis added).   Here, the plaintiff failed to exhaust his administrative remedies on his dental claims prior to filing the instant action.  Cabbagestalk v. Ozmint, 2007 WL 2822927 (D.S.C. 2007).  *See also* Neal v. Goord, 267 F.3d 116, 123 (2nd Cir.2001)(holding that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirements, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."); Jackson v. Dist. of Columbia, 254 F.3d 262, 268-69 (D.C.Cir. 2001)(rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial");  Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)(holding a "prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.");  Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir.1999) (holding "[a]n inmate incarcerated in a state prison, thus, must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983.");  Perez v. Wis. Dep't of Corr., 182 F.3d 532, 535 (7th Cir.1999) (holding "a suit filed by a

---

[8]He was given until January 21, 2008,  to correct the deficiencies and on January 20, 2008, the plaintiff re-filed the grievance.  (Def. Jaglal's Mem. Supp. Summ. J. Mot. Supplemental Randall Aff. Ex. B at 13-16.)

prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment."). Accordingly, the plaintiff's medical indifference claims should be dismissed as the plaintiff failed to exhaust his administrative remedies before filing his amended compliant.

### b. Merits

In any event, the medical records do not support the plaintiff's claims of deliberate medical indifference. The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

"Deliberate indifference is a very high standard. In Miltier, the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." 896 F.2d at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, 429 U.S. 104; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay

in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" <u>Coppage v. Mann</u>,

906 F.Supp. 1025, 1037 (E.D.Va.1995) (*quoting* <u>Monmouth Co. Corr. Inst. Inmates v. Lanzaro</u>, 834

F.2d 326, 347 (3d Cir.1987)).   Additionally, an inmate is not entitled to unqualified access to health

care; the right to medical treatment is limited to that treatment which is medically necessary and not

to "that which may be considered merely desirable." <u>Bowring v. Godwin</u>, 551 F.2d 44, 47-48 (4th Cir.

1977).

On January 14, 2005, the plaintiff had a loose tooth extracted by Dr. Jaglal.  Dr. Jaglal states

that:

> Two carpules anesthesia (novocaine), marcaine and lidocaine were administered.
> These are long lasting anesthetics that would cause the patient to be anesthetized for
> four to six hours after treatment. In addition, Mr. Slezak was given Percogesic, a pain
> medication, at the January 14, 2005, visit. Plaintiff never complained to me of any pain
> during or after the extraction.
>
> A simple extraction of a very loose tooth, as in the case of Tooth #24 of Mr. Slezak
> normally does not require a follow up visit, and I did not schedule one. Nor, to the best
> of my recollection, did I indicate to Mr. Slezak that a follow up visit would occur or
> be necessary. The normal procedure in the event that followup care is needed is for the
> inmate to submit a request to the dental office for such care. Inmate Slezak's records
> contain no evidence that he requested a follow up visit with respect to the January 14,
> 2005, extraction. That extraction is the only one that I have performed on Mr. Slezak.

(Def. Jaglal's Mem. Supp. Summ. J. Mot. Ex. B¶¶ 4-5.)   The plaintiff's medical records support Dr.

Jaglal's statements.  (*Id.* at Ex. 1 at 2.)

Dr. Jaglal further states that he  "would never have advised Mr. Slezak that he would be

brought back for a dental implant, because SCDC policy HS-18.13, Paragraph 2.6, expressly provides

that implants are not provided by SCDC."  This SCDC policy provides:

> The following services will not be provided: cosmetic dentistry; orthodontic treatment;
> crowns and bridges;  implant dentistry;  definitive periodontal surgery;  and  endodontic

28

canal therapy. Inmates wishing to obtain these services may apply for elective outside care at their own expense. (See SCDC    Policy/Procedure HS-18.15, "Levels of Care," for more
                                            information.)

(Def. Jaglal's Mem. Supp. Summ. J. Mot. Ex. B at 4.)    Dr. Jaglal states:

> Mr. Slezak was last provided with upper and lower partial dentures on or about September 17, 1999. Normal SCDC policy is that a person who claims to need dentures must request the dentures in writing, on the form entitled "Request for DentalProsthesis." A copy of a blank request form is attached as Exhibit 2 hereto. At no time after 1999 and prior to the filing of the Amended Supplemental Complaint has he ever mentioned to me, or to my knowledge, to anyone in the dental office, that he needed dentures, nor is there a denture request form in his file for any date after 1999 and prior to the filing of the Amended Supplemental Complaint.

(*Id*. at ¶ 7.)

Thus, the  record shows that although the plaintiff did file a request for dentures in November 2007, after he had filed his amended supplemental complaint, that request was denied under the SCDC policy that requires an inmate's next parole eligibility date to be more than six months in the future and at that time the plaintiff's next parole hearing was scheduled to be held in early 2008. (*See* Def. Jaglal's Reply Mem. Supp. Summ. J. Ex. 3 - SCDC Dental Policy- at 4.)   It is also clear that even if plaintiff's claims about his having made requests for implants or dentures are accepted as true, such claims would have been properly denied pursuant to the SCDC policies.

Additionally, the undersigned notes that  Dr. Jaglal states that he recently fitted the plaintiff for dentures on May 16, 2008, and expects the plaintiff to receive the new dentures in August.  (Def. Jaglal's Reply Mem. Supp. Summ J. Ex. 1 ¶ ¶ 19.)  Dr. Jaglal explains that the plaintiff had three teeth extracted in January 2008 and the plaintiff could not be fitted for new dentures until the extraction sites had healed.  (*Id*. at ¶¶ 11 &18.)  Further, Dr. Jaglal notes that the plaintiff's next scheduled annual parole review date is presently more than six months in the future.  (*Id*. ¶ 20.)   Accordingly, as Dr.

Jaglal is now in the process of providing new dentures to the plaintiff, the plaintiff's request for injunctive relief with regard to dentures is moot.

At best, then the plaintiff has merely experienced a delay in receiving dentures.  "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."  Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188 (11th Cir.1994).  As stated above, a medical need is serious if a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'"  Coppage v. Mann, 906 F.Supp. at 1037.  The plaintiff has failed to allege how any such delay in his treatment resulted in a detrimental effect or has caused him a life-long handicap or permanent loss.  Based on the foregoing, the plaintiff's medical indifference claim against Dr. Jaglal should be dismissed.

**4.  State Law Claims**

To the extent that the plaintiff states additional claims under state law, such as assault or negligence against the defendant Dr. Jaglal, the court should decline to exercise supplemental jurisdiction over these claims as it is recommended that summary judgment be granted on the plaintiff's federal claims as set for above. *See* 28 U.S.C. § 1367(c).

**5.  Plaintiff's Motion to Amend Complaint**

On May 8, 2008, the plaintiff filed a motion to amend his complaint to substitute named individual defendants for the John and Jane Doe members of the Board.  (Document # 144.) "[L]eave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).  "A motion to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  HCMF

30

Corp. v. Allen, 238 F.3d 273, 276 (4th Cir. 2001).    However, based upon the above recommendations, the plaintiff's amendments would be futile.  See Sciolino v. Newport News, Va., 480 F.3d 642, 651 (4th Cir. 2007) (holding denial of leave to amend complaint appropriate where proposed claim is futile).  Accordingly, the undersigned also recommends that the plaintiff's motion to amend his complaint be denied.

### III.  CONCLUSION

Based on the foregoing, it is recommended that the plaintiff's motion for partial summary judgment (document # 89) and to amend his complaint (document # 144) be DENIED; and the defendants' motions for summary judgment (documents # 114, 115, and 116) be GRANTED and the plaintiff's complaint be dismissed.

Further, it is recommended that the plaintiff's motion for an evidentiary hearing (document # 129) be DENIED, as moot.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 6, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

31